MOORE, A MINOR, ET AL., APPELLANTS, v. GRANDVIEW HOSPITAL, APPELLEE.

[Cite as Moore v. Grandview Hospital (1986), 25 Ohio St. 3d 194.]

(No. 85-1633—Decided August 6, 1986.)

*Gary L. Gardner & Associates, P.S.C., C. David Ewing* and *Gary L. Gardner,* for appellants.

*Miller, Finney & Clark* and *Jerome G. Menz,* for appellee.

CELEBREZZE, C.J. In this case we are asked to determine the propriety of the expert testimony given by Daniel Moore's treating physician, Lauren Vogel, D.O.

The admissibility of such testimony is governed by the statutory physician-patient privilege, R.C. 2317.02(B). R.C. 2317.02 states in pertinent part:

"The following persons shall not testify in certain respects:

"* * *

"(B) A physician concerning a communication made to him by his patient in that relation or his advice to his patient but the physician may testify by express consent of the patient * * * or if the patient, his executor or administrator, files a medical claim, as defined in division (D)(3) of section 2305.11 of the Revised Code, such filing shall constitute a waiver of this privilege with regard to the care and treatment of which complaint is made. * * *"

Appellants contend that Dr. Vogel was erroneously permitted to give privileged testimony far outside the scope of R.C. 2317.02(B) and our prior decisions interpreting that statute. In order to reach a conclusion as to whether the doctor testified improperly, we must first resolve appellee's claims that appellants had waived the right to assert the privilege.

Appellee first contends that the testimony of Shirley Moore operated as a waiver of the physician-patient privilege attaching to Dr. Vogel's treatment of her son, Daniel. We disagree. Mrs. Moore's only testimony regarding her communication with Dr. Vogel about his treatment of her son was as follows:

"A. Uh, well, he treated him [Daniel] as a normal child until he was about seven months old. He said he thought there might be something wrong with Daniel, and I had then—he had run some tests on Daniel. We weren't happy with the tests he was running, so we no longer went to Dr. Vogel. * * *"

We simply cannot imply a waiver of the entire physician-patient privilege based on such brief, general and innocuous testimony by the patient's mother.

R.C. 2317.02(B) also provides that the filing of a medical claim operates as a waiver of the physician-patient privilege *"with regard to the care and treatment of which complaint is made."* (Emphasis added.) This section clearly is designed to allow a physician who is being sued for malpractice to discuss privileged matters so that he might effectively defend himself. Appellee next contends that this statutory waiver as to a

defendant physician must in the instant case also be applied to Dr. Vogel, the non-defendant treating physician. Appellee relies on *Conti* v. *Lynn* (May 20, 1976), Franklin App. No. 75AP-591, unreported, in support of this contention.

In *Conti,* plaintiff's decedent was jointly treated by two doctors, but had brought a malpractice action against only one of those physicians in the cause before the court of appeals. Plaintiff had attempted to preclude as privileged the testimony at trial of the non-defendant treating physician on the ground his care and treatment were not the subject of that complaint. The court held that in those limited circumstances where "* * * one physician is working in consultation with another, and a party sues him, the resultant waiver essentially applies, not only to the physician sued, but also to the other consulting doctor. * * *"

The decision of the court of appeals in *Conti,* however, is inapplicable to the instant case. Appellee's contention that Drs. Snyder and Vogel were involved in joint treatment of the same patient is not supported by the record. The defendant-physician Snyder was an obstetrician who treated Shirley Moore. After the delivery of her son, Dr. Vogel, a pediatrician, assumed care of Daniel. The two doctors had separate and independent responsibilities. There is no evidence that these physicians consulted or jointly attended Mrs. Moore during her delivery, where it is alleged the malpractice complained of occurred. Thus, the statutory waiver of the privilege as to the defendant physician cannot be extended to Dr. Vogel under the circumstances of this case.

Having determined that appellee's claims of an implied waiver of the physician-patient privilege are without merit, we now can decide whether Dr. Vogel was erroneously allowed to give testimony prohibited by R.C. 2317.02(B). The statute proscribes testimony by a non-defendant physician concerning communication between physician and patient. Courts interpreting R.C. 2317.02(B) have held that a "communication" by a patient to his physician under this section may not only be by words, but also by exhibition of the patient's body to the physician for examination, diagnosis or treatment. *Baker* v. *Indus. Comm.* (1939), 135 Ohio St. 491 [14 O.O. 392], paragraph one of the syllabus. Communications may be oral or written. *In re Roberto* (1958), 106 Ohio App. 303, 309 [7 O.O.2d 63]. Communication includes knowledge transmitted by words and knowledge gained by observation. *Taylor* v. *Sheldon* (1961), 172 Ohio St. 118 [15 O.O.2d 206], paragraph three of the syllabus. Thus, the statutory privilege is not limited to mere verbal communications.

It is important to observe that while R.C. 2317.02(B) prohibits testimony as to privileged communications, the statute does not forbid testimony by a physician as to non-privileged matters. Thus, this court has decided that a non-defendant treating physician is competent to appear as an expert witness in a personal injury action brought by his patient as long as the physician avoids testimony as to privileged communications. In

*Strizak* v. *Indus. Comm.* (1953), 159 Ohio St. 475 [50 O.O. 394], ·at paragraph two of the syllabus (interpreting the predecessor to R.C. 2317.02), we held that a treating physician may give expert testimony "* * * *provided that in answering the questions he disregards what he learned and observed while attending the patient and his own opinion formed therefrom."* (Emphasis added.) This decision was followed by the court of appeals in *Vincenzo* v. *Newhart* (1966), 7 Ohio App. 2d 97 [36 O.O.2d 213], where the plaintiff's treating physician was allowed to testify as a defense witness, so long as he made no reference to privileged communications or advice.

The guidelines set forth in *Strizak, supra,* are equally applicable to a medical malpractice cause brought pursuant to R.C. 2305.11. We therefore hold that where the physician-patient privilege contained in R.C. 2317.02(B) has not been waived, a non-party treating physician may testify as an expert witness provided that in answering the questions he disregards what he learned and observed while attending the patient and his own opinion formed therefrom.

Upon examination of Dr. Vogel's testimony in the instant case, a fair reading of that testimony illustrates that it was based largely upon the doctor's own office chart regarding his care and treatment of Daniel Moore. Dr. Vogel specifically stated several times that his opinion regarding the cause of Daniel's brain damage was based on his observation and notes on the infant's condition upon arrival at Children's Hospital. Dr. Vogel's testimony was permeated by reliance on knowledge gained through his observation and treatment of Daniel Moore. This testimony encompassed privileged communications under R.C. 2317.02(B) and our cases interpreting the statute. In rendering his expert opinion Dr. Vogel clearly did not disregard what he learned and observed while treating his patient and his own opinion formed therefrom. Thus, it was error to admit such privileged testimony. We conclude that this was prejudicial error, requiring reversal.

This court has stated that the provisions of R.C. 2317.02(B) confer a substantial right. *State, ex rel. Holman,* v. *Dayton Press, Inc.* (1984), 11 Ohio St. 3d 66, 69. A violation of such a substantial right as the physician-patient privilege cannot be lightly disregarded. In balancing the probative value of Dr. Vogel's testimony against the prejudice resulting from it,[1] we have only to look at the repeated emphasis given to Dr. Vogel's privileged testimony by the appellee at trial. Further, appellee had previously designated additional expert witnesses who had no involvement in Daniel Moore's treatment, yet chose to rely on Dr. Vogel instead. Appellee candidly admitted that one of its trial strategies was to designate Dr. Vogel as an expert witness and call him to the stand in order to make appellants

---

[1] Evid. R. 403(A) provides that relevant evidence must be excluded if the danger of unfair prejudice substantially outweighs its probative value.

assert the physician-patient privilege in the presence of the jury. Appellee's own actions demonstrate that it chose Dr. Vogel as an expert witness in large measure because of the prejudicial impact his testimony, or even an attempt to present his testimony, would have. Considering the fact that appellee could have presented highly probative evidence from the other experts who were available, we believe that the substantial prejudice resulting from Dr. Vogel's erroneously admitted privileged testimony requires reversal of this cause.

For the foregoing reasons the judgment of the court of appeals is reversed and the cause is remanded to the trial court for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

SWEENEY, C. BROWN and DOUGLAS, JJ., concur.

LOCHER, HOLMES and WRIGHT, JJ., concur in part and dissent in part.

HOLMES, J., concurring in part and dissenting in part. I agree that, under R.C. 2317.02(B) and the authority provided by *Strizak* v. *Indus. Comm.* (1953), 159 Ohio St. 475 [50 O.O. 394], paragraph two of the syllabus, treating physicians whose privilege has not been waived may give expert testimony only if they disregard what they learned while attending their patients. However, applying the above law to the facts in this case, I cannot agree with the majority's conclusion that the trial court's admission of Dr. Vogel's testimony was erroneous.

The rule in *Strizak, supra,* clearly allows attending physicians to testify as to information within their general knowledge, *i.e.,* information not acquired merely through their physician-patient communications. This would allow such a physician to analyze records or other information put to him as a witness in order to make an expert judgment or conclusion based on his general knowledge.

In the case *sub judice,* Dr. Vogel testified that he did not become involved in the care or treatment of Daniel Moore until after the time of his birth. Therefore, his opinion based on his education, training, experience and analysis of the fetal heartbeat monitor strip, created before or at the time of birth, was properly allowable as outside the physician-patient privilege. He stated that *the record* did not contain many criteria associated with a brain-damaged child, as one would look for abnormalities "at the end of the pregnancy or during the delivery process," both being stages in which he was not involved as a treating physician. The rest of Dr. Vogel's testimony was similarly based on his analysis of various recorded tests: Apgar ("a seven Apgar after five minutes is not associated with a baby in severe distress"); CT scan ("if he had significant hypoxia you

should see some abnormalities in the CT"); and blood gas levels ("showed the amount of oxygen [and carbon dioxide and PH] in the blood were certainly within normal limits"). A cold analysis of these various tests, and what their results meant in terms of determining the causes of Daniel Moore's tragic disabilities, should not be barred under the physician-patient privilege merely because Dr. Vogel had also analyzed these tests at the time they were initially done. What he had learned as a treating physician did not play a significant role in his expert opinion. His conclusions that the child had suffered mild hypoxia and moderate respiratory difficulty, but that these conditions did not cause Daniel's brain damage, are admissible, even under this court's ruling in *Strizak, supra,* when based on an expert determination of the meaning of specific data.

Accordingly, I would affirm the court of appeals' allowance of Dr. Vogel's testimony.

LOCHER and WRIGHT, JJ., concur in the foregoing opinion.