KING ET AL., APPELLANTS, *v.* LAKAMP ET AL., APPELLEES.

(No. C-870815 — Decided July 6, 1988.)

*Santen, Shaffer & Hughes, John D. Holschuh, Jr.* and *Carole J. Kellerman,* for appellants.

*Spalding & Phillips* and *Kurt A. Philipps,* for appellees.

*Per Curiam.* Betty Jean King and her husband, Guy, plaintiffs-appellants, filed suit against Mrs. King's podiatrist, Steven LaKamp and Podiatry Associates of Cincinnati, Inc., defendants-appellees. Mrs. King had consulted LaKamp regarding pain she was experiencing in her right foot, and LaKamp performed surgery on the foot in order to correct the problem.

Mrs. King's problems worsened after the surgery, and she claimed that LaKamp's negligence caused her additional pain and suffering.

LaKamp moved for summary judgment, contending that he was not negligent and that Mrs. King's sole expert witness was not competent to testify as a matter of law. The trial court agreed and granted summary judgment in favor of all defendants, holding that Mrs. King's expert, an orthopedic surgeon named Michael Grefer, was incompetent to testify against a podiatrist. In its opinion, the trial court found that:

"Dr. Grefer is of a different school of medicine than Dr. LaKamp; that Dr. Grefer has no training in, or expert knowledge of, podiatric procedures; that he does not know, except in a most general fashion, how the school of podiatry differs from the practice of medicine by an M.D.; that, in fact, at least arguably, he stated that the procedure followed by Dr. LaKamp, a podiatrist, is an accepted procedure among some medical doctors (M.D.'s). It is thus further clear that Dr. Grefer's testimony would not be helpful to the trier of fact. His testimony is not admissible * * *."

In a single assignment of error, the Kings contend the trial court erred in granting summary judgment. The issue is one of competency of an expert witness, which is a matter within the sound discretion of the trial court, and we will not reverse unless the court abused its discretion. *Ohio Turnpike Comm.* v. *Ellis* (1955), 164 Ohio St. 377, 58 O.O. 179, 131 N.E. 2d 397. In this case we find the trial court abused its discretion when it misapplied the law of Ohio.

There is a line of authority, consisting mainly of older cases, holding that "when a patient selects a doctor of a recognized school of treatment" the patient is presumed to adopt "the kind of *treatment* common to that school * * *." (Emphasis added.) *Willett* v. *Rowekamp* (1938), 134 Ohio St. 285, 287, 12 O.O. 91, 92, 16 N.E. 2d 457, 458-459. The modern trend is clearly away from a strict interpretation of the "same school" rule. See *Collom* v. *Pierson* (N.D. 1987), 411 N.W. 2d 92, 96 ("The notion that a medical witness must be of the same 'school of medicine' as the medical defendant has not been significant for a long time, even before this state adopted the Federal pattern of evidentiary rules."); *Fridena* v. *Evans* (1980) 120 Ariz. 516, 520, 622 P. 2d 463, 467 ("where standards of different schools are or should be the same with respect to a particular condition, experts from such schools should be fungible in terms of their competency to testify regarding those specific standards"); *Ashburn* v. *Fox* (Fla. App. 1970), 233 So. 2d 840.

Indeed, Ohio follows this general trend. Where "the fields of medicine overlap and more than one type of specialist *may perform the treatment,* a witness may qualify as an expert even though he does not practice the same specialty as the defendant." (Emphasis added.) *Alexander* v. *Mt. Carmel Medical Center* (1978), 56 Ohio St. 2d 155, 158, 10 O.O. 3d 332, 334, 383 N.E. 2d 564, 566. The test of admissibility is whether a particular witness offered as an expert will aid the trier of fact in the search for the truth, not whether the expert witness is the best witness on the subject. *Ishler* v. *Miller* (1978), 56 Ohio St. 2d 447, 453, 10 O.O. 3d 539, 542, 384 N.E. 2d 296, 300; *Alexander, supra,* at 159, 10 O.O. 3d at 334, 383 N.E. 2d at 566.

We have emphasized the word "treatment" because that is the focal point of the analysis in this type of case. Grefer's testimony in his deposition is clearly not based on his knowledge of podiatry, as the trial court correctly noted. However, Grefer re-

peatedly discussed the particular procedures that LaKamp performed on Mrs. King, stating that he was familiar with both the procedures and the purposes for which they were employed.

In his deposition, Grefer testified that he was a licensed physician specializing in orthopedic surgery, including foot surgery. Further, Grefer stated that he had been trained by a world-renowned expert in foot surgery. Grefer also testified in detail about the three surgical procedures employed by LaKamp.

First, Grefer stated that LaKamp performed a proximal phalanx osteotomy with a wire fixation. Grefer stated that he was familiar with this procedure, and that it involved a breaking of the bone in the great toe of the right foot and the insertion of a pin.[1] This operation is performed to treat a bunion or a deformity of the toe, such as when the toe points out in a different direction and causes pain.

Second, Grefer stated that LaKamp performed a proximal phalanx head resection of the second, fourth and fifth toes, along with a K-wire fixation of the second toe. This consists of cutting out pieces of bone and inserting a pin in the second toe. Grefer stated the purpose is to straighten the toes so shoes can be worn more comfortably and the foot can bear weight with less pain. Grefer stated that he was familiar with this procedure and performed a similar procedure in his practice.

Finally, Grefer stated that LaKamp cut the tendons at the tops of the second, third, fourth and fifth toes. This is done to relieve clawing of the toes. Grefer again stated he was familiar with this procedure, and that he performed it in his practice.

Grefer concluded his testimony by stating that he had reviewed LaKamp's notes and the preoperative X-rays, and that he had taken a case history from Mrs. King. Grefer stated that, from his review, it was his opinion that the surgery was unwarranted, with the possible exception of the surgery on the fourth toe.

We find that Grefer demonstrated sufficient familiarity with the procedures employed by LaKamp to be competent to testify. Further, Grefer's testimony would be helpful to the trier of fact in its search for the truth. Any question regarding the fact that Grefer is a medical doctor specializing in orthopedic surgery and LaKamp is a podiatrist is a matter of weight and credibility for the jury.

We recognize, as LaKamp points out at length, that Grefer testified regarding the applicable standard of care "from an orthopedic standpoint." Grefer could do nothing else. LaKamp would have us declare that the same surgical procedures are subject to differing standards of care depending upon whether the surgeon is a medical doctor or a podiatrist. Such a rule would exalt form over substance. All practitioners who perform a given surgical procedure are subject to the identical standard of care in their decision to perform that operation. When Grefer stated the standard of care for an orthopedic surgeon he was necessarily stating the standard of care for a podiatrist. For a given operation, the standard of care does not rise or fall on the expertise of a particular practitioner; neither does the standard of care for a particular operation depend upon the "school" of the practitioner.

This rule is consistent with the case law of Ohio. For example, in

---

[1] In his deposition, Grefer referred to the biggest toe of the foot as the "great" toe and the next toe as the second toe and so on. For convenience we adopt this nomenclature.

*Willett, supra,* medical doctors were found incompetent to testify about the treatment employed by a chiropractor because there was no testimony establishing the doctors' "knowledge of or experience with" the treatment. *Willett, supra,* at 288, 12 O.O. at 92, 16 N.E. 2d at 459. However, they were permitted to testify regarding the necessity for X-rays in the diagnosis of the plaintiff's condition. *Id.* at 289, 12 O.O. at 93, 16 N.E. 2d at 459. It was the medical doctors' familiarity with the diagnostic procedure that rendered them competent to testify about it. This is the general rule throughout the country. See 61 American Jurisprudence 2d (1981), Physicians, Surgeons and Other Healers, Section 353.

In light of the foregoing, the trial court abused its discretion in holding that the Kings' expert was not competent to testify. We find the assignment of error to be well-taken, and we reverse the decision of the trial court and remand this cause for further proceedings consistent with this decision and law.

*Judgment reversed
and cause remanded.*

HILDEBRANDT, P.J., DOAN and KLUSMEIER, JJ., concur.