**BERLINGER et al., Appellants,**

v.

**MT. SINAI MEDICAL CENTER et al., Appellees.**

[Cite as *Berlinger v. Mt. Sinai Medical Ctr.* (1990), 68 Ohio App.3d 830.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 57335.

Decided Oct. 22, 1990.

832

*Don C. Iler, L.P.A., Don C. Iler* and *Nancy C. Iler,* for appellants.

*Jacobson, Maynard, Tuschman & Kalur* and *Patrick J. Murphy; Reminger & Reminger Co., L.P.A.,* and *Gary H. Goldwasser,* for appellees.

FORD, Judge.

Rebekah Berlinger and her parents, Randel and Heidi Berlinger, complained that the defendants, Robert Schwartz, M.D., Beachwood OB/GYN, Inc., and Mt. Sinai Medical Center committed medical malpractice during the labor of Heidi and birth of Rebekah. The Berlingers maintain that, as a result of the alleged malpractice, Rebekah suffered serious, permanent, neurological damage. A jury verdict for the defendants precipitated this timely appeal in which the plaintiffs raise six assignments of error.[1] In these assignments, the Berlingers claim error in the court's jury instructions, violation of the physician-patient privilege, and improper questions and cross-examination of witnesses by defense counsel. For the reasons which follow, we find the assigned errors are without merit and affirm.

At about 11:30 p.m. on July 9, 1984, Heidi Berlinger went to Mt. Sinai Medical Center in labor for the birth of her first child. The next day, after more than twelve hours of labor, Heidi's obstetrician, Robert Schwartz, M.D., ordered the drug Pitocin to increase the extent and frequency of contractions. At about 2:00 p.m., when Heidi's cervix was fully dilated, she went into the second stage of labor and began to push. An hour and one-half later,

---

**1.** See Appendix.

Schwartz decided that the failure of the baby to descend into the birth canal, after nearly two hours of pushing, necessitated a caesarian delivery. Less than an hour later, Heidi gave birth to Rebekah by caesarian section. Though Rebekah appeared normal at birth, it later became apparent that she had physical and developmental abnormalities.

Plaintiffs' expert, Dr. David C. Abramson, opined that the cause of Rebekah's neurological damage was oxygen deprivation during the course of labor. Abramson maintained that, had Schwartz intervened earlier with a caesarian delivery, the child would not have incurred brain damage at birth. Abramson testified that data from the fetal monitor attached to the baby's scalp during labor indicated that the baby was in distress after 12:30 p.m. on the day of delivery, July 10.

In defense, Dr. Schwartz told the court that data from the fetal monitor indicated that the baby was in good condition before birth. He explained that because he saw no signs of fetal distress he allowed labor to continue. Schwartz testified that his decision to perform a caesarian delivery was due to Heidi's failure to progress in labor, rather than fetal distress.

Dr. Leon Mann, a defense expert witness, considered Schwartz's care and treatment of Heidi to be within the acceptable standard of care for an obstetrician. He did not agree that the data on the fetal monitor strip revealed that the baby was distressed.

Defense expert Dr. Mack Scher likewise told the jury that his review of the fetal monitor strip failed to indicate that the baby suffered oxygen deprivation sufficient to cause brain damage. In his opinion, Rebekah's physical and developmental problems were congenital.

Pediatric neurologist Samuel Horowitz, M.D., agreed that Rebekah's physical and developmental abnormalities were not caused by asphyxia during labor and delivery.

█ In the first assignment of error, the Berlingers allege that the court erred when it instructed the jury that an expert witness must confine his opinion to matters within his specialty or scientific field of inquiry.

The plaintiff's sole medical expert at trial was David Abramson, a board-certified specialist in pediatric, perinatal and emergency medicine. The defendant doctor, Schwartz, is a board-certified obstetrician and gynecologist.

The court gave the following instruction with respect to the weight of expert testimony:

"In determining the weight of such expert testimony, you may take into consideration their skill, experience, knowledge, veracity, familiarity with the facts of this case and the usual rules for testing credibility and determining

the weight to be given to their testimony. An expert witness must confine their opinion [*sic*] to matters within their [sic] specialty or scientific field of inquiry."

The plaintiffs claim that this instruction required that the jury reject Abramson's opinion as a matter of law because he testified outside his specialty.

Evid.R. 601(D), which restates R.C. 2743.43(A), precludes testimony by an expert on liability issues in a medical claim unless, among other qualifications, " * * * the person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state * * *."

The purpose of this statute is to prevent testimony by a physician who lacks the necessary experience in a field he seeks to evaluate. *McCrory v. State* (1981), 67 Ohio St.2d 99, 21 O.O.3d 63, 423 N.E.2d 156; *Price v. Cleveland Clinic Found.* (1986), 33 Ohio App.3d 301, 515 N.E.2d 931. Nevertheless, where "fields of medicine overlap and more than one type of specialist may perform the treatment, a witness may qualify as an expert even though he does not practice the same specialty as the defendant." *Alexander v. Mt. Carmel Medical Ctr.* (1978), 56 Ohio St.2d 155, 158, 10 O.O.3d 332, 334, 383 N.E.2d 564, 566. An expert witness need only aid the trier of fact in the search for the truth and need not be the best witness on the subject. *Id.; Ishler v. Miller* (1978), 56 Ohio St.2d 447, 10 O.O.3d 539, 384 N.E.2d 296. See, also, *King v. LaKamp* (1988), 50 Ohio App.3d 84, 553 N.E.2d 701. All practitioners who perform a medical or surgical procedure are subject to the same standard of care. *King, supra.* That standard is not dependent upon a practitioner's specialty. *Id.* Differences in areas of specialization go to the weight evidence is to be given by a fact finder. *Id.*

Abramson testified that he was a board-certified perinatologist. He described his specialty as follows:

"Perinatal comes or perinatology comes from, peri means around like perimeter. Natal means birth and ology means the study of, so perinatology is the study of the period around birth and that encompasses the mother and fetus, mother and baby before birth from the time the fetus could first live if it were delivered, so from the time the fetus is very small and premature up until the end of the first 28 days of the baby's life, and that's what is defined as the perinatal period."

From this description it appears that the specialty of perinatology overlaps with obstetrics with respect to the care of a mother and her baby near and at birth. The doctor further explained that he taught medical students and

residents obstetrics and gynecology while he was director of nurseries at Georgetown's University Hospital in the late 1970s.

Abramson testified in detail about the causes and effects of oxygen deprivation during labor and the indications of fetal distress, called "late decelerations," which he claimed were apparent from the monitor readings. He criticized Schwartz's failure to perform a caesarian delivery earlier in the day. It appears that Abramson confined his testimony to his specialty as he defined it.

The court's instruction did not require that the jury disregard Abramson's testimony. The charge advised the jury that questions regarding the fact that Abramson and Schwartz practiced in different areas of specialization were matters for their consideration when deciding the weight to be given evidence. Cf. *King, supra* (orthopedic surgeon testified against a defendant podiatrist); *Alexander v. Mt. Carmel Medical Ctr., supra* (podiatrist testified to standard of care in a claim against an orthopedic surgeon). In view of the fact that Abramson testified within his specialty, as he defined it, we find that, though the objected to instruction was unnecessary, it did not prejudice the plaintiffs.

The first assignment of error fails.

In their second assignment the plaintiffs claim that expert testimony by one of Rebekah's treating physicians, Samuel Horowitz, M.D., was improperly admitted in violation of the physician-patient privilege.

The admission of the testimony of a non-party treating physician is governed by R.C. 2317.02, the statutory physician-patient privilege. *Moore v. Grandview Hosp.* (1986), 25 Ohio St.3d 194, 25 OBR 259, 495 N.E.2d 934. The statute provides, in relevant part:

"The following persons shall not testify in certain respects:

" * * *

"(B)(1) A physician concerning a communication made to him by his patient in that relation or his advice to his patient, except as otherwise provided in this division and division (B)(2) of this section, and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject."

Although the statute prohibits testimony regarding matters which are privileged, R.C. 2317.02(B) does not prevent a physician from testifying as to non-privileged matters. *Moore, supra.*

"Where the physician-patient privilege contained in R.C. 2317.02(B) has not been waived, a non-party treating physician may testify as an expert witness 'provided that in answering the questions he disregards what he learned and

observed while attending the patient and his own opinion formed therefrom.' (*Strizak v. Indus. Comm.* [1953], 159 Ohio St. 475 [50 O.O. 394, 112 N.E.2d 537], paragraph two of the syllabus, applied and followed.)" *Moore, supra,* at syllabus.

A fair reading of the Horowitz testimony reveals that it was based upon Rebekah's Mt. Sinai medical records. Horowitz stated that he based his opinion of the cause of the child's abnormalities on the records from Mt. Sinai and the hypothetical facts presented by defense counsel. He swore that when he answered these questions he excluded any of his observations or information gleaned from University Hospital records where he consulted on Rebekah's case. Thus, Horowitz's testimony was unlike the physician's in *Moore, supra,* which the court found " * * * permeated by reliance on knowledge gained through * * * " privileged communication. *Id.,* 25 Ohio St.3d at 198, 25 OBR at 262, 495 N.E.2d at 937. Here the doctor rendered his expert opinion based upon the Mt. Sinai records which were not developed during his care or treatment of the child.

The plaintiffs further contend that Horowitz's opinion was based upon a diagnosis of developmental delay, deafness and poor reflexes not found in the Mt. Sinai medical records. They maintain that the doctor could only have learned this diagnosis by reviewing University Hospital records or from his observations as Rebekah's physician.

 Our review of the record reveals that defense counsel presented Horowitz with hypothetical questions which included the child's diagnosis. "[A] hypothetical question [is] one which assumes facts the evidence tends to show and calls for an opinion based upon the hypothesis." *Strizak, supra,* 159 Ohio St. at 478, 50 O.O. at 395, 112 N.E.2d at 538. A treating physician may give expert testimony in response to proper hypothetical questions so long as he disregards what he learned and observed while treating a patient. *Id.* We, therefore, find nothing in Horowitz's testimony which would cause this court to conclude that he testified with respect to a privileged matter.

Accordingly, the second assignment of error is overruled.

 In the third assignment of error, the Berlingers claim error by the court when it permitted impeachment of their expert witness with medical literature which post-dated the alleged negligent act.

The court permitted defense counsel to question Abramson regarding a medical article published in the Journal of Pediatrics on August 2, 1988. Though the article was neither admitted in evidence nor proffered for the record, the part of the article the Berlingers found objectionable was quoted in the record, as follows:

"MR. GOLDWASSER [a defense attorney]: The conclusion of this article, your Honor, is as follows, and I'm reading from the conclusion. * * * [']To reach a rational conclusion about whether a person with cerebral palsy who is born at term acquired his or her disability because of intrapartum asphyxia, a series of four questions is necessary. The answer to all four of these questions must be affirmative before anything approaching a reasonable medical certainty of causal relationship can be supported.

" 'One, was there evidence of marked and prolonged intrapartum asphyxia? Two, did the infant as a newborn exhibit signs of moderate or severe hypoxic endemic encephalopathy during the newborn period with evidence also of asphyxial injury to other organ symptoms? Three, is the child's neurologic condition one that intrapartum asphyxia could explain? Four, has the workup been sufficient to rule out other conditions?[']"

The plaintiffs contend that it was error to permit cross-examination on the article because it post-dated the alleged malpractice by four years.

The scope of cross-examination is well recognized as a matter which is within the discretion of the trial court. Absent a clear and prejudicial abuse of discretion, this court will not reverse a ruling by a trial court on the scope of cross-examination. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 17 O.O.3d 98, 407 N.E.2d 490. Moreover, the court's discretion also controls " * * * the extent to which learned treatises may be used in the cross-examination of expert witnesses." *Id.* at 163, 17 O.O.3d at 100, 407 N.E.2d at 493. See, also, *DiMarco v. Bernstein* (Oct. 13, 1988), Cuyahoga App. No. 54406, unreported, 1988 WL 112972.

In permitting the use of the article, the court commented that the article did not touch upon the standard of care to be used by a physician, but rather it discussed the causes of cerebral palsy. The plaintiffs argue that, because proximate cause is an essential element of negligence, it was improper to permit cross-examination on an article which discusses a theory of causation developed after the birth of Rebekah.

We recognize that a doctor is required to exercise the care and skill of a physician in his profession in light of medical knowledge existing at the time of treatment. *Ault v. Hall* (1928), 119 Ohio St. 422, 164 N.E. 518; *Beach v. Chollett* (1928), 31 Ohio App. 8, 166 N.E. 145. We cannot conclude, however, that the article discussed medical and scientific knowledge which was not in existence at the time of Rebekah's treatment based solely on the date of the article.

The Berlingers claim that the article contains an impermissible legal opinion. Upon review of the portion of the article produced in the record, we

find that the text of the article used to impeach Abramson contained a medical theory of causation, not a legal conclusion regarding proximate cause.

The plaintiffs also allege that Abramson was not given adequate time to review the article before being examined. The record reflects that the court permitted a ten-minute recess for that purpose. There is no indication in the record that Abramson sought more time to read the article.

Even assuming that the court erred by allowing the article to be used for impeachment purposes, such error would not merit reversal unless the court's action was inconsistent with substantial justice. *O'Brien, supra;* Civ.R. 61. In view of the substantial other evidence that the causes of the child's developmental abnormalities were other than oxygen deprivation at birth, we conclude that any error in permitting impeachment based upon the article would be harmless.

The third assignment of error fails.

 In the fourth assignment, the plaintiffs claim the court erroneously denied their mistrial motion based upon allegedly improper impeachment of their expert Abramson.

During cross-examination, the defendants made an effort to demonstrate that Abramson was a biased witness with a pecuniary interest in the case. Defense counsel asked Abramson questions regarding his 1976–1977 association with Medical–Legal Consulting Services, Inc., an organization which provided services on a contingency fee basis. Upon objection, the court confirmed for the jury that Abramson was not receiving a contingent fee for his services in this case, stating: "That is not the case here." Defense counsel continued:

"Q. I'm not implying that is the case here. Exhibit H is a contract in Medical–Legal Consulting Services, Inc. Is that your signature on there?

"MR. ILER [plaintiff's counsel]: Objection, your Honor. I thought you already ruled on this.

"THE COURT: You can't talk about this.

"MR. ILER: Judge, will you please instruct the jury?

"THE COURT: Mr. Iler, don't make a speech."

The Supreme Court has held that:

"The scope of cross-examination of a medical expert on the question of the expert's bias and pecuniary interest and the admissibility of evidence relating thereto are matters that rest in the sound discretion of the trial court." *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008, syllabus.

Absent an abuse of discretion, this court may not reverse a trial court's decision with respect to the scope of cross-examination. *Id.; O'Brien, supra.* Cf. *Piontkowski v. Scott* (1989), 65 Ohio App.3d 4, 582 N.E.2d 1002; *Hardy v. Fattah* (Dec. 26, 1989), Stark App. No. CA–7773, unreported, 1989 WL 155724. Such abuse " * * * connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Calderon, supra,* 70 Ohio St.2d at 220, 24 O.O.3d at 323, 436 N.E.2d at 1010, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157–158, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148–149. We are also mindful that the question before this court is whether the trial court abused its discretion, not whether we would have ruled similarly when confronted with these questions. *Calderon, supra.*

The Berlingers argue that the court erred by permitting cross-examination which referred to contingency fee arrangements made in other cases eleven years before this trial. The record reveals that the court confirmed that fee arrangements in the Berlingers' case were not contingent and the court so advised the jury. Though the prior contingency fee arrangements appear to be remotely connected to Abramson's possible bias, coupled with the court's clarification regarding the fee arrangement in this case, we cannot say that the court abused its discretion.

The plaintiffs further argue that the court erred when it failed to instruct the jury to disregard a reference to Abramson's contract with Medical–Legal Services, Inc., which had apparently been ruled inadmissible.

The decision of a trial court to give a cautionary instruction is discretionary and will not be disturbed by a reviewing court absent an abuse of discretion. *State v. Frost* (1984), 14 Ohio App.3d 320, 14 OBR 386, 471 N.E.2d 171. See Civ.R. 51(B). The court indicated that the contract was not a proper subject for cross-examination. We find no abuse of discretion by the court in declining to further instruct the jury.

The fourth assignment fails.

The fifth and sixth assignments of error are interrelated and will be addressed jointly. In these assignments, the Berlingers object to the defense lawyer's question about inadmissible medical records and the court's failure to instruct the jury to disregard that question.

On cross-examination, Heidi Berlinger was asked whether she would be willing to let the jury see all the medical records in the case. Before she replied, the court sustained the plaintiffs' objection and told the jury: "You can't draw any conclusions of that question, all right?" The plaintiffs contend that the medical records question implied that they were hiding records.

■ It is unprofessional for an attorney to ask a question which implies the existence of a fact which he cannot support by evidence. *State v. DePew* (1988), 38 Ohio St.3d 275, 528 N.E.2d 542. Certain of Rebekah's medical records had been ruled inadmissible before trial. Thus, defense counsel knew he could not support his question with admissible evidence. We cannot say, however, based upon this single question that the jury could infer wrongful conduct by the Berlingers, particularly because plaintiffs' objection was sustained before the question was answered.

■ The plaintiffs also maintain that the court's cautionary instruction was not adequate. A jury is presumed to follow instructions given it by the court. *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237. We find that the court's instruction to the jury not to draw any conclusions from the question had the same effect as advising the jury to disregard the question.

We are compelled to comment on defense counsel's overzealous cross-examination of plaintiffs' expert on a treatise he had limited opportunity to review and an eleven-year-old fee arrangement, as well as counsel's unprofessional questioning of Heidi Berlinger. Were it not for the trial court's prompt intervention we might conclude that the cumulative effect of the defense counsel's marginally permissible trial tactics would merit reversal. In view of all the evidence, however, we cannot say that the court's actions were inconsistent with substantial justice.

Accordingly, the fifth and sixth assignments of error are not well taken.

The judgment is affirmed.

*Judgment affirmed.*

PRYATEL, J., concurs.

JOHN F. CORRIGAN, J., dissents.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, and ROBERT FORD, J., retired, of the Geauga County Common Pleas Court, sitting by assignment.

### Appendix

### Assignments of Error

"1. The trial court erred in overruling plaintiffs' motion for new trial which was based on the erroneous jury instruction that a medical expert

witness must confine his opinion to matters within his specialty or scientific field of inquiry.

"2. The physician-patient privilege set forth in Ohio Revised Code Section 2317.02 was violated when the defendant Dr. Schwartz presented at trial the expert opinion testimony of plaintiff's treating physician Dr. Samuel Horowitz who incorporated in his opinion knowledge he gained from treating the plaintiff as his patient.

"3. Trial court erred when it permitted the defendant Mt. Sinai to cross-examine plaintiffs' medical expert witness on medical literature that contained legal opinion and postdated the defendants [*sic*] negligent act by four years.

"4. The trial court erred in denying plaintiffs' motion for mistrial which was based on the defendant Dr. Schwartz's attorney['s] cross-examination of plaintiffs' expert regarding a contingency fee contract dated in 1977 and involving another case.

"5. Where before trial the court ruled that certain hospital records were inadmissible at trial, it is misconduct warranting a reversal of the case where the defense counsel on cross-examining plaintiff's mother asks if she would be willing to let the jury see all the records in this case for their consideration.

"6. The trial court erred in failing to instruct the jury to disregard a question by defense counsel on cross-examination of one of the plaintiffs who was asked if she would let the jury see all the records in this case for their consideration when before trial the court ruled the hospital records inadmissible."