DECISION
Catherine and James Wolgamot, plaintiffs-appellants, appeal the August 27, 2001 judgment of the Franklin County Court of Common Pleas rendered against defendant-appellee, Sheryl Heit, and in favor of appellants in the amount of $500, and against appellee and in favor of State Farm Mutual Automobile Insurance Company ("State Farm") in the amount of $2,506.84.
On October 15, 1997, appellant, Catherine Wolgamot (referred to individually as "appellant") was involved in an automobile accident with appellee. On September 22, 1999, appellant and her husband, James, filed a complaint seeking damages for injuries sustained as a result of the accident. A trial commenced before a magistrate and jury on August 6, 2001. In support of her claims, appellant presented the expert medical testimony of four of her treating physicians. Noble Allman, D.C., Eric Legg, D.O., and James Rutherford, M.D., testified via videotaped depositions. Scott Cohen, D.C., testified in person at trial. Walter Hauser, M.D., testified at trial as appellee's sole medical expert.
During the course of the pretrial depositions of Drs. Legg and Rutherford, appellee raised several objections, which the magistrate ruled upon in an entry filed August 9, 2001. Appellee objected to Drs. Legg and Rutherford reading from the report of Dr. James Powers, who also treated appellant. Appellee's counsel claimed the testimony was based upon hearsay testimony of a physician who would not testify at trial, citing Hytha v. Schwendeman (1974), 40 Ohio App.2d 478. The magistrate struck portions of Dr. Legg's and Dr. Rutherford's videotaped testimony in which they read verbatim excerpts from the report of Dr. Powers, in which Dr. Powers gave his diagnosis, treatment plans, and prognosis. None of Dr. Hauser's testimony regarding Dr. Powers' report was stricken.
At trial, prior to final arguments, the magistrate stated he believed it was unfair to allow Dr. Hauser to testify as to Dr. Powers' report after having precluded Dr. Legg's and Dr. Rutherford's testimony regarding the report. The magistrate attempted to remedy this perceived unfairness by admitting Dr. Powers' full report as an exhibit at the end of trial. On August 8, 2001, the jury returned a verdict against appellee and in favor of appellants in the amount of $500, and against appellee and in favor of State Farm in the amount of $2,506.84. The trial court filed its judgment journalizing the jury's findings on August 27, 2001. Appellants have appealed the trial court's judgment. Appellee has also filed a notice of conditional cross-appeal, requesting that if we reverse and remand the matter based upon appellants' appeal, the entire case, including State Farm's subrogation claim, should also be reversed and remanded. Appellants assert the following assignments of error:
 [I.] Did the magistrate's exclusion of testimony regarding the report of Dr. Powers from the depositions of Plaintiffs' medical experts while allowing Defendant's medical expert to testify about same constitute reversible error[?]
 [II.] Did the magistrate commit reversible error by allowing defense counsel to repeatedly question Plaintiffs' medical experts on irrelevant, immaterial and impertinent matters when such questions, regardless of the answer provided, permitted the jury to speculate on matters not in evidence?
Appellants argue in their first assignment of error the trial court erred in excluding the deposition testimony of Drs. Legg and Rutherford regarding Dr. Powers' medical report, while permitting Dr. Hauser to testify as to Dr. Powers' report. It is well-established that the admission and exclusion of evidence rests within the sound discretion of the trial court. State v. Robb (2000), 88 Ohio St.3d 59, 68. Absent an abuse of discretion, as well as a showing that the accused has suffered material prejudice, an appellate court will not disturb a ruling by a trial court as to the admissibility of evidence. State v. Martin (1985),19 Ohio St.3d 122, 129. An abuse of discretion connotes more than an error of law or judgment, and implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Appellants first assert that the magistrate erred in excluding the testimony of Drs. Legg and Rutherford regarding Dr. Powers' report but not Dr. Hauser's testimony on the same. The magistrate struck these portions of Dr. Legg's and Dr. Rutherford's depositions because the opinions and diagnoses of Dr. Powers, who did not testify at trial, constituted hearsay pursuant to Hytha, supra. In Hytha, this court found that medical opinions and diagnoses presented via a medical record or through the testimony of other expert witnesses are not within the hearsay exception of Evid.R. 803(6), unless seven criteria are met. In the present case, appellants do not object to the actual application of Hytha but, rather, as to the magistrate's disparate application of Hytha.
However, the magistrate admitted just prior to final arguments that he recognized the unfairness under the circumstances and attempted to correct the unfairness by admitting Dr. Powers' report into evidence. We find that even if the magistrate applied Hytha disparately between appellants' experts and appellee's expert, such was cured by the magistrate's decision to allow Dr. Powers' full report to be introduced into evidence. Although appellants argue that the exclusion of Dr. Legg's and Dr. Rutherford's testimony did not give a "complete picture" of Dr. Powers' report, and that Dr. Hauser "incompletely portrayed Dr. Powers' conclusion * * * [,]" the introduction of the entire report remedied these claimed prejudices. We agree with appellee that the jury received an even more complete picture and portrayal of Dr. Powers' report and conclusions by having the entire, actual report introduced instead of merely hearing the portions referred to by Drs. Legg, Rutherford, and Hauser in their depositions. A review of the redacted portions of Dr. Legg's and Dr. Rutherford's depositions reveals there was nothing additional the jury could have learned from their excluded testimony than what was contained in the actual report. The jury learned through the actual report of Dr. Powers' diagnosis, opinions on additional medical treatment, and prognosis regarding the length of recovery. Thus, appellants can demonstrate no prejudice in the exclusion of the testimony of Drs. Legg and Rutherford because the jury had Dr. Powers' entire report available for review.
Appellants present several arguments as to why the introduction of the report into evidence did not cure the unfairness, all of which we find unavailing. Appellants assert that admitting the entire report did not rectify the unfairness because the exclusion of Dr. Legg's and Dr. Rutherford's testimony and the inclusion of Dr. Hauser's left the jury to speculate whether Drs. Legg and Rutherford were aware of the conclusions of Dr. Powers. However, it was clear from the record that Drs. Legg and Rutherford were fully aware of Dr. Powers' report, treatment, and opinions. Dr. Powers' report was contained in the office charts of both Drs. Legg and Rutherford, and the office charts were admitted into evidence. The report was admitted into evidence without any instruction to the jury to disregard any portion thereof. The magistrate did not limit appellants' ability to use, display, emphasize, or reference Dr. Powers' report, alone or in conjunction with the other doctors' office charts, in any manner during closing arguments. Thus, appellants had the opportunity to emphasize to the jury that Drs. Legg and Rutherford were aware of the conclusions of Dr. Powers.
Also, despite appellants' contention that the trial court's ruling resulted in the "total exclusion" of any reference to Dr. Powers by Drs. Legg and Rutherford, Drs. Legg and Rutherford were permitted to reference several times Dr. Powers' report in their testimony presented to the jury, again demonstrating to the jury that the doctors were aware of Dr. Powers' conclusions. The jury was permitted to hear Dr. Legg testify to the following:
 Q. A couple of questions. Why did you recommend the consultation with the physical medicine doctor [identified specifically as Dr. Powers in the previous answer]?
 A. I think from the timing of her first complaints when she first saw me till [sic] this visit that I felt that she needed some additional expertise as she was not improving.
 Q. Did you receive a report from Dr. Powers regarding the consultation?
 A. Yes. I received a letter from Dr. Powers on April 22nd, 1998.
* * *
 Q. Doctor, based upon the report that you received from Dr. Powers did you prescribe any treatment for Ms. Wolgamot?
* * *
 A. Based upon that I think we did want her to continue the physical therapy[.]
Thus, it is clear that Dr. Legg was aware of Dr. Powers' treatment, received Dr. Powers' report, and, in fact, was permitted to testify that he recommended Dr. Powers due to his expertise.
Similarly, Dr. Rutherford was permitted to refer to Dr. Powers several times in his testimony. Dr. Rutherford testified as to the following:
 Q. And can you relate to us the history that she gave you?
* * *
 A. * * * She was treated by Dr. Cohen from mid November until March of 1998. She returned to Dr. Legg who sent her to see Dr. Powers. Dr. Powers is a physiatrist or a specialty in rehab medicine.
Dr. Rutherford further testified:
 Q. [C]an you tell the jury what records you reviewed and what if any significance those records had?
 A. * * * Because of the persistent problems a consultation was requested with Dr. James Powers.
In addition, Dr. Rutherford stated:
 Q. Doctor, you also testified that you reviewed records from Dr. Scott Cohen, Dr. Eric Legg, Dr. James Powers, do you recall testifying to that?
A. Yes.
 Q. Within a reasonable degree of medical probability was the treatment rendered by those individuals reasonable and necessary as a direct and proximate result of the injuries sustained by Cathy Wolgamot in the accident of October 15th, 1997?
* * *
Q. Do you have an opinion?
A. Yes, I have an opinion.
Q. And what is your opinion?
* * *
 A. It's my opinion that the treatment was reasonable and related and also related to the accident of October 15th, 1997.
Q. And in your opinion was it also necessary?
A. It is my opinion it was also necessary, yes.
Given this testimony by Dr. Rutherford, the jury was clearly informed that he was aware of Dr. Powers and his treatment of appellant. Dr. Rutherford even testified that Dr. Powers' treatment was necessary and reasonable. Thus, the record reveals that both doctors were not totally excluded from referring to Dr. Powers and his treatment. The office charts of Drs. Legg and Rutherford admitted into evidence, which included Dr. Powers' report, and the direct testimony of Drs. Legg and Rutherford, also demonstrated to the jury that both doctors were aware of Dr. Powers' reports and conclusions. This argument is without merit.
Appellants further assert that because the jury heard testimony regarding Dr. Powers from Dr. Hauser but heard "nothing" from Drs. Legg and Rutherford in this regard, Dr. Hauser was placed in a "superior" position because he was the only one permitted to testify as to Dr. Powers' honesty and qualifications. However, as explained above, Dr. Legg was permitted to testify that he referred appellant to Dr. Powers because of Dr. Powers' "expertise." Dr. Rutherford was permitted to testify that Dr. Powers' treatment was reasonable and necessary. Thus, both doctors expressed their opinions on Dr. Powers' qualifications. Further, the redacted testimony from Drs. Legg and Rutherford contained only verbatim statements from Dr. Powers' report and did not in any way comment on the honesty or credibility of Dr. Powers. We find this argument without merit.
For the foregoing reasons, we find appellants failed to demonstrate they were prejudiced by the trial court's decision to redact the portions of Dr. Legg's and Dr. Rutherford's testimony with regard to Dr. Powers' report or by the magistrate's determination to admit Dr. Powers' entire report to remedy any possible unfairness. Appellants' first assignment of error is overruled.
Appellants argue in their second assignment of error that the magistrate erred in allowing counsel for appellee to repeatedly question appellants' medical experts on irrelevant, immaterial, and impertinent matters when such questions permitted the jury to speculate on matters not in evidence. Appellant points to several questions appellee's counsel asked Dr. Legg: (1) "What are the physical symptoms of depression, in general?"; (2) "What are the physical symptoms of chronic fatigue syndrome?"; (3) "And all of this can happen as part of the normal aging process?"; (4) "Would you agree that pending litigation is known to prolong symptomatology in patients?"; and (5) "Would you agree that lawsuits are a distraction to recovery?"
The trial court has the discretion to limit the scope of cross-examination. Berlinger v. Mt. Sinai Medical Ctr. (1990),68 Ohio App.3d 830, 838. The trial court also retains wide latitude to impose reasonable limits on cross-examination based upon the concerns of harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. Delaware v. Van Arsdall (1986), 475 U.S. 673, 679, 106 S.Ct. 1431. As such, an appellate court should be slow to disturb a trial court's determination on the scope of cross-examination unless the trial court has abused its discretion and the party illustrates a material prejudice. Reinoehl v. Trinity Universal Ins. Co. (1998), 130 Ohio App.3d 186, 194. Further, Evid.R. 611(B) provides that cross-examination shall be permitted on all relevant matters and matters affecting credibility.
In the present case, with regard to the first three questions concerning what is "normal" and what are the "general" characteristics of a condition, appellants argue that Dr. Legg is not an epidemiologist who can give an opinion on the distribution of medical conditions in populations, and, regardless, there was no proper basis for these questions as they related to appellant. We disagree. As appellee points out, Dr. Legg testified that he noted in his medical records that appellant had previously suffered from depression and also experienced chronic fatigue since the birth of her child, about six years prior to her accident. Thus, because appellant's medical history on these subjects was relevant to her present medical condition as it related to her personal injury claim, we find these questions had a proper foundation. Further, with regard to the questions concerning recovery from a strain injury and the normal effects of aging, we believe Dr. Legg did not have to be an epidemiologist to render opinions on these general matters. Given his education and experience, Dr. Legg was qualified to answer such basic queries. It should also be noted that appellee did not needlessly pursue these lines of questioning after obtaining responses from Dr. Legg. Thus, this argument is without merit.
Appellant also argues that the fourth and fifth questions regarding the effect of litigation on recovery and symptomatology were "patently offensive" and without basis. However, as appellee points out, Dr. Legg's records indicate appellee's counsel had a reasonable basis to inquire about these issues. In a December 1, 1998 personal letter appellant wrote to Dr. Legg, she questioned the opinions on causation he rendered in a letter to her attorney. She stated that "I cannot myself understand how this pain and back problems [sic] cannot be attributed to my auto accident." She also told Dr. Legg that her chiropractor found the accident was the cause of her back pain. She stated that she was "concerned" as to his conclusion as to causation and specifically stated "I am asking you to consider this case again to see if it is still your opinion that the auto accident did not significantly or entirely contribute to the results of the MRI." Appellant related to Dr. Legg that her attorney told her she would not be able to recover damages unless Dr. Legg changed his opinion on the matter. She continued, "[a]ll of the problems with our having to get a new vehicle and my not being able to work at our sub shop, for a period of time, and moving to a less expensive home were also a result of the accident. It has been not only a painful year for me and my family, but a stressful one as well." In a January 11, 1999 letter from Dr. Legg to appellant, Dr. Legg responded that because the MRI scans cannot indicate when the degenerative changes became present, it was impossible for him to determine to a reasonable degree of medical certainty that the findings described in appellant's MRI scans could be directly attributed to the accident only.
The comments made by appellant in her letter gave appellee's counsel at least some minimal, reasonable foundation to ask Dr. Legg questions with regard to the letter, appellant's motivation for writing the letter, and the effect of appellant's legal concerns on her symptoms and recovery. Under the circumstances of this case, we find no error in the trial court allowing appellee's counsel to ask Dr. Legg these questions. For the foregoing reasons, appellants' second assignment of error is overruled. Given our disposition of appellants' first and second assignments of error, appellee's conditional cross-appeal is rendered moot.
Accordingly, appellants' two assignments of error are overruled, appellee's conditional cross-appeal is rendered moot, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK, P.J., and LAZARUS, J., concur.