DECISION
{¶ 1} Angel Mesa-Acosta, defendant-appellant, appeals the May 7, 2002 judgment of the Franklin County Court of Common Pleas, wherein the court journalized a jury verdict finding appellant guilty of murder, in violation of R.C. 2903.02, an unclassified felony.
{¶ 2} On August 27, 2001, the victim, Armando "Jessi" Trejo Reyes, and his friends were celebrating his birthday at the apartment of a friend, Alfredo Calacar (also known as "Francisco Olivara" and "Poncho") (referred to hereafter as "Poncho"). During the party, Poncho began touching Reyes's girlfriend, Erica Johnson. Reyes and Poncho began arguing about Poncho's behavior, and both men exited the apartment. Erica and her friend, Kelly Calmes, followed Poncho and Reyes outside and attempted to stop the argument, during which Poncho punched Kelly, and Erica jumped on Poncho. Kelly testified that she returned to the apartment to find some friends to help stop the fight, but was unsuccessful. Kelly testified that when she went back outside, Erica and Poncho were on the ground fighting in an alley. She stated Reyes was not fighting, and she never saw him arguing with or hitting Erica. Erica testified that Reyes never hit her. Poncho also testified that Reyes never hit Erica. At that time, appellant, who lives in the same apartment complex, appeared and began arguing with Reyes. Erica testified that Reyes and appellant had exchanged words with each other the day before. Reyes had told her that he did not trust appellant and that they had had "some problems" before.
{¶ 3} Appellant testified that he was leaving a friend's apartment when he witnessed a man hitting a woman whose lip was bleeding. Appellant stated that he had seen the man around the apartments in the past. When appellant told the man to stop hitting the woman, the man said something back to him and approached him. Appellant testified that he tried to walk away, but the man swung at him and then kicked him in the leg. Appellant stated that earlier that day he put a piece of sharp scrap metal from work in his pants. When the man came at him again, appellant pulled out the piece of scrap metal and stabbed him. He said he had not been able to run away from the man because his leg had been previously injured, and the man had injured it again when he kicked him.
{¶ 4} A neighbor in an adjacent apartment, Anthony Khalijh, testified that he and his girlfriend witnessed the incident. He testified that it looked to him as if Reyes was trying to break up an argument between a man and a woman. He stated that he saw appellant come out of another apartment and approach Reyes. He said appellant started pushing Reyes and that Reyes was trying to push him off. Khalijh testified that appellant then reached into his pocket, pulled out a knife, and stabbed Reyes. He stated that after Reyes fell to the ground, appellant threatened Erica and Kelly. Kelly also testified that after appellant stabbed Reyes, he said to Erica and her, "Quiera, you want some" and was swinging the knife. Khalijh's girlfriend, Deborah Fultz, testified that appellant then took the knife, walked back toward her, wiped off the knife, and took off running. Appellant was eventually arrested at his residence.
{¶ 5} Appellant was indicted on one count of murder. A jury trial commenced on March 11, 2002, and appellant claimed the alternative theories of self-defense and provocation. The trial court instructed the jury on both theories. On March 15, 2002, the jury found appellant guilty. On the same day, the trial court held a sentencing hearing and sentenced appellant to fifteen years to life imprisonment. Appellant appeals the judgment of the trial court, asserting the following single assignment of error:
{¶ 6} "The trial court abused its discretion in failing to allow appellant's counsel to fully cross-examine a state's eyewitness, thereby depriving appellant of a fair trial."
{¶ 7} Appellant argues in his sole assignment of error the trial court erred in failing to allow him to fully cross-examine Khalijh, who claimed to be an eyewitness to the murder. On direct examination, Khalijh testified that appellant approached Reyes and pushed him, and Reyes was trying to push appellant away from him. He testified that appellant then reached into his pocket, pulled out a knife, and stabbed Reyes. On cross-examination, appellant's counsel questioned Khalijh about what he told appellant's private investigator, Jerry Knoblauch. Khalijh indicated that he spoke to the investigator but denied that he had told the investigator that appellant and Reyes had exchanged punches.
{¶ 8} Appellant's counsel then began to ask Khalijh, "[d]id you tell [the private investigator] that you saw — -" before counsel for the state objected. The trial court sustained the objection. The trial court indicated that such question was not proper cross-examination unless he had a document signed by Khalijh. The court refused to allow appellant's counsel to ask Khalijh if he told the private investigator that he saw Reyes punch appellant. Counsel for appellant moved for a mistrial on the basis that he was denied his right to impeach Khalijh under Evid.R. 613 using a prior inconsistent statement, but such motion was denied. The trial court said that before appellant's counsel could impeach Khalijh, he was first required to present some evidence of the prior inconsistent statement, be it through a written statement or testimony from the private investigator.
{¶ 9} The trial court has the discretion to limit the scope of cross-examination. Berlinger v. Mt. Sinai Medical Ctr. (1990),68 Ohio App.3d 830, 838. Trial courts also have wide latitude in imposing reasonable limits on the scope of cross-examination based upon concerns about harassment, prejudice, confusion of the issues, the witnesses' safety, or repetitive, marginally relevant interrogation. Delaware v. Van Arsdall (1986), 475 U.S. 673, 106 S.Ct. 1431. As such, an appellate court should be slow to disturb a trial court's determination on the scope of cross-examination unless the trial court has abused its discretion and the party illustrates a material prejudice. Reinoehl v. Trinity Universal Ins. Co. (1998), 130 Ohio App.3d 186, 194.
{¶ 10} Evid.R. 613 provides, in pertinent part:
{¶ 11} "(A) Examining witness concerning prior statement
{¶ 12} "In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.
{¶ 13} "(B) Extrinsic evidence of prior inconsistent statement of witness
{¶ 14} "Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
{¶ 15} "(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
{¶ 16} "(2) The subject matter of the statement is one of the following:
{¶ 17} "(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
{¶ 18} "(b) A fact that may be shown by extrinsic evidence under Evid. R. 608(A), 609, 616(B) or 706;
{¶ 19} "(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence."
{¶ 20} Appellant asserts the trial court erred in prohibiting his counsel from attempting to impeach Khalijh using a prior inconsistent statement. Appellant maintains that Evid.R. 613 does not require that a prior statement be written or presented prior to questioning the witness who is being impeached. The state presents little argument in support of the trial court's ruling. Instead, the state maintains that even if the trial court improperly refused to allow appellant's counsel to fully cross-examine Khalijh, appellant has failed to demonstrate that he was prejudiced by the trial court's ruling. The state points out that counsel was able to fully develop his defense through the direct testimony of the private investigator.
{¶ 21} In his brief, appellant indicates that his counsel should have been permitted to ask Khalijh whether he had previously told the investigator that appellant and Reyes had both thrown punches. Appellant argues that such testimony would have established his self-defense claim or demonstrated that Reyes was inflaming his passions and increasing the contentiousness of the fight. We agree with the state that, even if the trial court erred in failing to allow appellant's counsel to impeach Khalijh using a prior inconsistent statement, the testimony of the private investigator cured any error in denying appellant's counsel the opportunity to elicit such testimony or impeach Khalijh.
{¶ 22} Appellant presented the testimony of the private investigator solely to impeach Khalijh's testimony with a prior inconsistent statement. The private investigator's testimony clearly presented evidence that Khalijh initially told him that both Reyes and appellant were throwing punches. The investigator testified:
{¶ 23} "A. He told me that the Defendant came from somewhere, and he wasn't sure where, that he walked up to where this group of people were. He and the man that now is dead got into some kind of an altercation, an argument; however, they were speaking in Spanish, he didn't have any idea what was said. The next thing he knew, there were punches being thrown but he doesn't know who threw the first punch, but there was an exchange of punching. He said that the next thing that he realized was that the Defendant reached into his right pocket, pulled out what appeared to be a serrated bladed kitchen knife and thrust it forward into the decedent's chest.
{¶ 24} "Q. Did he say that there were punches being thrown by the decedent at, at Angel, at the Defendant?
{¶ 25} "A. Yes, that's what he said. He doesn't — — he didn't know who threw the first punch, but there was an exchange, brief exchange of punching."
{¶ 26} Thus, appellant was given the opportunity to present evidence through the investigator tending to impeach Khalijh's in-court testimony that he did not see any punches thrown. The investigator's testimony that Khalijh initially reported to him that punches had been thrown was sufficient to cure any error by the trial court in limiting appellant's cross-examination of Khalijh with regard to his statements to Knoblauch. The jury had Knoblauch's testimony to consider in determining the credibility of Khalijh's in-court testimony. Apparently, the jury found Khalijh's testimony credible and appellant's not credible, and, thus, rejected appellant's theory that he acted in self-defense or that Reyes inflamed his passions and increased the contentiousness of the fight. Therefore, we find any error in the failure to permit Khalijh's testimony was harmless error and not prejudicial to appellant's substantial rights given the later admission of Knoblauch's testimony. See Evid.R. 103(A) and Crim.R. 52(A).
{¶ 27} Accordingly, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE and DESHLER, JJ., concur,