REINOEHL, Appellant,

v.

**TRINITY UNIVERSAL INSURANCE COMPANY et al., Appellees.**

[Cite as *Reinoehl v. Trinity Universal Ins. Co.* (1998), 130 Ohio App.3d 186.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–155.

Decided Sept. 30, 1998.

188

*A.M. Fishman Co., L.P.A.,* and *Andrew M. Fishman; Rogers, Godberg & Horner Co.* and *George C. Rogers,* for appellant.

*Ulmer & Berne LLP* and *Alexander M. Andrews,* for appellee Trinity Universal Insurance Co.

*Reminger & Reminger* and *Thomas D. Hunter,* for appellee Lorene G. Ward.

MASON, Judge.

On November 1, 1992, Michael L. Reinoehl, plaintiff-appellant, and Lorene Ward, defendant-appellee, were involved in an automobile accident in Columbus, Ohio. Appellant was traveling westbound on Tompkins Street, which is a single-lane one-way street. Ward was northbound on Wall Street, which is an alley. Ward stated that she stopped at Tompkins, but she could not see around a van parked on Tompkins. Ward further stated that she "inched" her vehicle beyond the van and onto Tompkins in order to see oncoming traffic. Appellant stated that he saw Ward just prior to hitting her vehicle. Appellant's vehicle sustained damage in the left-front bumper area, while Ward's vehicle sustained damage in

the right-front bumper area. The police report indicated that the damage to the vehicles was moderate and that both vehicles were operable after the accident.

At the time of the accident, appellant did not complain of any injuries. However, appellant later claimed that he sustained back injuries as a result of the accident. Appellant also claimed that, because of his injuries, he could not continue working at his job because his position required him to be on roller blades. In February 1993, appellant submitted a settlement offer of $50,000 to Ward's insurance carrier, Trinity Universal Insurance Company ("Trinity"), defendant-appellee. Trinity did not accept the settlement offer and requested evaluations of appellant's alleged injuries.

Dr. Peter Kent, a chiropractor who treated appellant, wrote in a letter dated February 9, 1993:

"[Appellant] is unable the make any quick rotatory movements with his cervical spine without incapacitating pain; his low back range of motion is decreased to approximately 50% its normal capacity; his lifting capacity is reduced to a maximum repetitive weight of 20 pounds."

Kent also stated that appellant "should never return to his pre-injury position of skate guard as his low back will always be prone to injury." Carla Jacobs, who is also a chiropractor that treated appellant, opined in February 1993 that there are "no clinical reasons that [appellant] should have any permanent damage and should return to his pre-injury functioning level."

In June 1993, Trinity arranged for an examination of appellant by Dr. Alan Longert, an orthopedic surgeon. During the examination, appellant complained that he could not disrobe without assistance and that he had difficulty walking. Longert stated that, when appellant entered the examination room, "he exhibited no abnormalities in gait," and when he left the office and building, appellant was observed "getting in his car without any difficulties." Trinity thereafter hired Gene Laws, a private investigator, to investigate whether appellant had submitted fraudulent claims to Trinity. Laws then hired appellant to paint a garage, which was painted by appellant on June 23 and 24, 1993. Laws secretly videotaped appellant while he was working.

On July 23, 1993, Trinity received a letter from appellant requesting a settlement for $47,650. Appellant stated in the letter that, since the accident, "I have been unable to work." Appellant also stated in the letter that he had "problems bending over, picking up things, raising my hands over my head, and can't even lift more than ten to fifteen pounds." Trinity thereafter contacted the National Insurance Crime Bureau ("NICB") to report what Trinity considered to be a fraudulent insurance claim. NICB investigated appellant and submitted its investigation file to Timothy Ryan, a prosecutor for Franklin County. After

some additional investigation by Ryan, evidence was presented to a grand jury concerning appellant.

In March 1994, appellant was indicted by a grand jury for (1) attempted theft, a violation of R.C. 2923.02 and 2913.02; (2) insurance fraud, a violation of R.C. 2913.47; and (3) falsification, a violation of R.C. 2921.13. The charges were dismissed on June 7, 1995, shortly before appellant's trial was to begin. Ryan stated that the prosecution of appellant did not continue because the "evidence we relied upon to secure an indictment would not be available to us at the time of trial."

On June 7, 1996, appellant filed a complaint against appellees. Appellant alleged that Ward was negligent in failing to yield to traffic, which caused appellant to suffer damages, and Trinity was liable for malicious prosecution and intentional infliction of emotional distress. On February 25, 1997, the trial court granted Trinity's motion for separate trials, bifurcating appellant's negligence claim from his claims of malicious prosecution and intentional infliction of emotional distress.

On September 5, 1997, a jury found the negligence claim in favor of Ward and against appellant. Appellant filed a motion for a "Judgment N.O.V. and for New Trial" on September 15, 1997, claiming that the verdict was incorrect because Ward's actions were negligent as a matter of law. On October 6, 1997, the trial court overruled appellant's motion for a new trial and also entered judgment in favor of Ward for the negligence claim.

On September 2, 1997, Trinity filed a motion for summary judgment for appellant's claims of malicious prosecution and intentional infliction of emotional distress. The trial court granted the motion on December 9, 1997, holding that Trinity's statements made to the Franklin County Prosecuting Attorney's office were privileged. The granting of the motion for summary judgment was journalized by the court on January 12, 1998.

Appellant appeals the judgments of October 6, 1997 and January 12, 1998, and presents the following assignments of error:

"Assignment of Error No. 1

"The trial court erred in failing to grant plaintiff's motion for a directed verdict and plaintiff's motions for judgment N.O.V. and for a new trial in plaintiffs [*sic* ] action against defendant-appellee Lorene G. Ward.

"Assignment of Error No. 2

"The trial court erred in providing answers to the jury's questions during deliberations by making it appear that plaintiff had 'not wanted' to submit evidence that defendant had been charged and plead to a failure to yield and had

insurance, when the court should have instructed the jury that such evidence was not relevant and not admissible, not that it was potentially available but not introduced.

"Assignment of Error No. 3

"The trial court erred in allowing admission into evidence a videotape that was not authenticated, and was not related by any witness to any relevant issue at trial, specifically the causation of medical injuries requires a medical expert relating the evidence to the injury or lack of injury.

"Assignment of Error No. 4

"The trial court erred in granting defendant Trinity Universal Insurance Company's motion for summary judgment on plaintiff's malicious prosecution claim, specifically by holding the element of malicious prosecution as defined by the Ohio Supreme Court, 'malice in instituting the prosecution' can never be met because 'a defendant may be held to account for a false statements [sic], even if made with actual malice, ..., only if the statement bears no reasonable relation to purported criminal activity reported.'

"Assignment of Error No. 5

"The trial court erred in granting defendant, Trinity Universal Insurance Company's Motion for Summary Judgment on plaintiff's malicious prosecution claim, without having so much as ruled upon the plaintiff's Motion to Compel Discovery filed on July 24, 1997."

Appellant argues in his first assignment of error that the trial court should have granted his motion for judgment notwithstanding the verdict and for a new trial in his negligence action against Ward pursuant to Civ.R. 50 and 59. In his motion, appellant requested that judgment be entered finding Ward liable to appellant and that a new trial should be held concerning damages.

A party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the motion pursuant to Civ.R. 50(B). The moving party may join a motion for a new trial with the motion for judgment notwithstanding the verdict. Civ.R. 50(B). "The standard for granting a motion for judgment notwithstanding the verdict or in the alternative for a new trial pursuant to Civ.R. 50(B) is the same as that for granting a motion for a directed verdict pursuant to Civ.R. 50(A)." *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 679, 693 N.E.2d 271, 273.

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable

minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." Civ.R. 50(A)(4).

When considering a motion for a judgment notwithstanding the verdict, the court must "neither consider the weight of the evidence nor the credibility of the witnesses." *Texler* at 679, 693 N.E.2d at 273. The motion " 'raises a question of law because it examines the materiality of the evidence, as opposed to the conclusions to be drawn from the evidence.' " *Id.* at 680, 693 N.E.2d at 273.

Appellant claims that the evidence presented at the trial established that Ward was liable as a matter of law. R.C. 4511.41(A) states:

"When two vehicles, including any trackless trolley or streetcar, approach or enter an intersection from different streets or highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right."

The definition of "right-of-way" includes "The right of a vehicle * * * to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle, streetcar, trackless trolley, or pedestrian approaching from a different direction into its or the individual's path[.]" R.C. 4511.01(UU)(1). Additionally, the Ohio Supreme Court has stated:

" 'The driver of a vehicle lawfully approaching from the right has the right to assume that the driver of the vehicle approaching from the left will obey the law by yielding the right of way. If however the former, just as he is approaching or entering the intersection, discovers that the latter is not yielding the right of way and has thereby placed himself in a perilous situation, it becomes the duty of the former to use ordinary care not to injure the latter after becoming aware of his perilous situation.' " *Morris v. Bloomgren* (1933), 127 Ohio St. 147, 187 N.E. 2, paragraph five of the syllabus; *Lumaye v. Johnson* (1992), 80 Ohio App.3d 141, 143, 608 N.E.2d 1108, 1109.

"The law gives to the operator of a vehicle on the highway who has the right of way a shield, an absolute right to proceed uninterruptedly, but he forfeits the shield if he fails to proceed in a lawful manner." *Vavrina v. Greczanik* (1974), 40 Ohio App.2d 129, 135, 69 O.O.2d 146, 149–150, 318 N.E.2d 408, 414; *Cramer v. Detrick* (Nov. 10, 1993), Montgomery App. No. 13583, unreported, 1993 WL 462233.

In the present case, the parties do not dispute that appellant had the right-of-way. Ward claims that appellant lost his right-of-way status because appellant "was not proceeding in a lawful manner because he either looked but did not see that which he should have seen or he simply failed to look as required."

However, a review of the evidence presented to the jury does not reveal any evidence that appellant was driving unlawfully. Both appellant and Ward estimated appellant's speed to be about twenty miles per hour, which was below the posted speed limit of twenty-five miles per hour. Additionally, no evidence was presented at the trial showing that appellant was not paying attention while he was driving, or that he violated any traffic code.

Therefore, after having construed the evidence most strongly in favor of Ward, we find that appellant's motion for judgment notwithstanding the verdict should have been granted because, based upon the evidence before the trier of fact, Ward was negligent as a matter of law. We are unable to find any evidence that would lead a reasonable person to find that appellant lost his absolute right to proceed uninterruptedly. We also hold that a new trial should be held concerning the issue of damages. Accordingly, we sustain appellant's first assignment of error.

Appellant argues in his second assignment of error that the trial court gave improper answers to questions the jury posed after it had begun to deliberate. This issue is rendered moot because we found in appellant's first assignment of error that appellant's motion for a judgment notwithstanding the verdict should have been granted by the trial court. Therefore, pursuant to App.R. 12(A)(1)(c), we will not address appellant's second assignment of error.

Appellant argues in his third assignment of error that the trial court erred in allowing the videotape of appellant painting a garage into evidence. Appellant claims that the videotape was unauthenticated and was prejudicial because it had been edited. We disagree.

The admission of photographic evidence is left to a trial court's sound discretion. *State v. Mason* (1998), 82 Ohio St.3d 144, 158, 694 N.E.2d 932, 949. Reviewing courts should be slow to interfere with a court's determination concerning the admissibility of evidence unless the court has clearly abused its discretion and the party has been materially prejudiced thereby. *Fisher v. Univ. of Cincinnati Med. Ctr.* (Aug. 25, 1998), Franklin App. No. 98AP–142, unreported, 1998 WL 542701, following *State v. Maurer* (1984), 15 Ohio St.3d 239, 265, 15 OBR 379, 401–402, 473 N.E.2d 768, 791–792.

Appellant first contends that the videotape was not properly authenticated. Authentication is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). The videotape in question depicts appellant doing physical labor. Prior to the videotape being played before the jury, Ward's counsel had the following exchange with appellant:

"Q. Now, when we looked at the videotape in my office, you agreed with me, did you not, that most of the videotape showed you?

"A.   Yes, that's correct.

"Q.   And that the videotape accurately depicted the activities you were doing at the time the tape was running?

"A.   On those specific moments, yes."

While appellant argues that the videotape was inaccurate because it did not portray periods of rest, appellant had an opportunity to present these inaccuracies to the jury.   As stated by another court:

"[I]t must be remembered that authenticity is a preliminary matter for the court to decide.   Once the tape was admitted into evidence, the jury was not bound by its contents.   Appellant was still free to present evidence that the tape did not accurately depict the events as they occurred." *State v. Fancher* (July 31, 1989), Clermont App. No. CA88–10–076, unreported, 1989 WL 85091, following Staff Note to Evid.R. 901(A).

Accordingly, we find that the videotape was authenticated pursuant to Evid.R. 901(A).

Appellant next argues that the videotape should have been excluded because it was prejudicial pursuant to Evid.R. 403.   Evid.R. 403(A) states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."   A review of the videotape shows that it was highly relevant concerning the seriousness of appellant's injuries he claimed to have sustained from the accident.   Because the videotape was highly relevant, we conclude that its probative value was not substantially outweighed by the danger of unfair prejudice.   Therefore, we find that appellant was not unfairly prejudiced pursuant to Evid.R. 403 because the trial court allowed the videotape to be admitted as evidence.   Appellant's third assignment of error is overruled.

Appellant next argues in his fourth assignment of error that the trial court erred in granting Trinity's motion for summary judgment on appellant's malicious prosecution claim.   Appellant argues that the trial court's decision granted "absolute immunity for Trinity Universal's agents malicious testimony about the alleged crime in the grand jury causing it to return an indictment."   Appellant further claims that there was evidence that Trinity "falsified evidence and omitted significant exculpatory evidence, which would have shown a lack of probable cause to indict for insurance fraud."

When reviewing a grant of summary judgment, a reviewing court must follow the standard set forth in Civ.R. 56(C), which specifically provides that, before summary judgment can be granted, it must be determined that " '(1) [n]o genuine issue as to any material fact remains to be litigated;   (2) the moving party is

entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.'" *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1132, quoting *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; *Std. Elec. Serv. Corp. v. Gahanna–Jefferson Pub. Schools* (Aug. 25, 1998), Franklin App. No. 97APE11–1520, unreported, 1998 WL 542696.

Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. *Welco* at 346, 617 N.E.2d at 1131–1132. When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court. *Jones v. Shelly Co.* (1995), 106 Ohio App.3d 440, 445, 666 N.E.2d 316, 319–320.

We have recently stated:

"A private person who initiates or procures the institution of criminal proceedings against another is not subject to liability unless the person against whom the proceedings were initiated proves all three of the following elements: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause for undertaking the prosecution, and (3) termination of the prosecution in favor of the accused." *Fair v. Litel Communication, Inc.* (Mar. 12, 1998), Franklin App. No. 97APE06–804, unreported, 1998 WL 107350, following *Ash v. Ash* (1995), 72 Ohio St.3d 520, 651 N.E.2d 945.

The lack of probable cause generally becomes the essence of a claim for malicious prosecution for the reason that malice may be inferred if probable cause was not present. *Fair.* Probable cause is defined as a "'reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person is guilty of the offense with which he is charged.'" *Id.*, quoting *Huber v. O'Neill* (1981), 66 Ohio St.2d 28, 30, 20 O.O.3d 17, 19, 419 N.E.2d 10, 12. The return of an indictment by a grand jury raises a rebuttable presumption that probable cause exists. *Mayes v. Columbus* (1995), 105 Ohio App.3d 728, 737–738, 664 N.E.2d 1340, 1345–1347. "In order to rebut this presumption, plaintiff was required to produce 'substantial' evidence that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise 'significantly' irregular." *Fair.*

Appellant was indicted by a grand jury for attempted theft, insurance fraud, and falsification. Therefore, appellant had the burden to produce substantial evidence that the return of the indictment resulted from perjured testimony

or that the grand jury proceedings were otherwise significantly irregular. A review of the record shows that appellant did not meet his burden of producing substantial evidence that the indictment resulted from perjured testimony. Instead, a review of the record reveals substantial evidence that would lead a reasonable person to find that probable cause existed to indict appellant for attempted theft, insurance fraud, and falsification.

For example, appellant was examined by Longert on June 15, 1993. Dr. Longert described appellant's examination in his deposition as follows:

"When he was asked to disrobe he advised me he would be unable to do so alone and would need help, since he cannot get his shoes, socks, or clothes off. * * *

" * * *

"[Appellant's] heel and toe gait was characterized by attempts to fall, but he catches himself along with the moaning, groaning, and hyperventilation. His gait in the exam room is observed to be performed with a very stiff low back and slow movement—with a very stiff low back and slow movement of both lower extremities."

The difficulties that appellant displayed during Longert's examination were not apparent before and after the examination. Longert stated:

"When [appellant] entered the office into the exam room he exhibited no abnormalities in gait. He was also observed leaving the office and building, getting in his car without any difficulties."

Longert stated in his report of the examination that appellant's "alleged severity of symptoms and alleged excruciating pain * * * [are] out of proportion to findings on this examination."

A review of the videotape taken of appellant, on June 23 and 24, 1993, would also lead a reasonable person to conclude that appellant's injuries were not as severe as he had alleged. The videotape shows appellant performing various tasks, including carrying cement blocks, dragging logs, loading lumber into a truck, climbing a tree, sawing branches in a tree, climbing a ladder and painting a garage. Appellant is seen on the videotape performing these tasks with little or no difficulty.

Appellant's assessment of his injuries at the same period of time can be characterized as directly contrary to Longert's observations and the videotape. Appellant stated in his letter written less than one month after appellant was videotaped that, since the car accident, "I have been unable to work." Appellant wrote that "I can't even perform medial duties like taking out trash, vacuuming, or taking care of my own children." Appellant further wrote:

"Since the accident I have experienced pain in both my mid & lower back, right hip, neck, and some pain in my right leg. The pain radiates to my left arm and also my stomach muscles. There are pins and needles in my pointing finger and my middle finger, along with screatching [sic] headaches that come and go.

"I have problems walking long distance or even standing for long periods of time. I can't sit for more than twenty minutes to a half hour before experiencing pain, which makes driving a problem. I also have problems bending over, picking up things, raising my hands over my head, and can't even lift more than ten to fifteen pounds.

"The pain of the injury has enabled me to do mostly everything I enjoy such as, going out with friends, riding motorcross, boating, waterskiing, snow skiing. [Sic.] I did do all of these things previous to the car accident including working which I had to buy a fairly expensive pair of roller skates for. These are just a few examples of things I've been denied. It is also frustrating having to get up every morning at three and four am. in pain, I can't remember the last peaceful night sleep I've had."

In a deposition taken on August 27, 1993, appellant stated that his back "keeps me from doing a lot of things that I need to do, things that I like to do, basic chores around the house I have a hard time doing. I have neighbor boys that help me out. I also have two kids that I have problems taking care of, I can't carry them around."

Appellant also stated in the deposition that he had "problems with moving my arms up above my shoulders" and that he had "problems holding my arm in an upper position like that for a long period of time." The combination of Longert's observations and the videotape, compared with appellant's claim of injuries sustained from the accident, would lead to the conclusion that probable cause existed for an indictment of appellant.

Appellant's case for malicious prosecution is further weakened by Prosecutor Ryan, who stated that he "made a determination that I think this case ought to go. * * * I had decided that this case would be presented to the grand jury." While appellant correctly points out that the criminal case against appellant did not go to trial, Ryan explained in a letter to Trinity:

"Since the time of the indictment it became apparent that evidence we relied upon to secure an indictment would not be available to us at the time of trial. The case has been continued a number of times and we have tried unsuccessfully, to secure the evidence we feel is essential to prosecute this case."

Appellant presented no evidence that Ryan dismissed the criminal case against him because perjured or false testimony had been provided to the grand jury.

Additionally, appellant had the burden of showing that Trinity acted with "malice in instituting or continuing the prosecution." *Fair.* The Ohio Supreme Court has stated that malice "[f]or purposes of malicious prosecution * * * means an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." *Criss v. Springfield Twp.* (1990), 56 Ohio St.3d 82, 85, 564 N.E.2d 440, 443.

In Ohio, insurance companies are under a statutory obligation to report suspected insurance fraud involving automobiles:

"If an insurance company, or agent authorized by the company to act on its behalf, has reason to suspect that a loss involving a motor vehicle that is insured by the company is part of a fraudulent scheme to obtain control of motor vehicle insurance proceeds, the company or agent shall notify a law enforcement officer or a prosecuting attorney of any county having jurisdiction over the alleged fraud." R.C. 3937.42(B).

In order to show malice, appellant had the burden of showing that Trinity acted with "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." The record shows that Trinity transferred information to the prosecution that Trinity obtained from Trinity's and NICB's investigation of appellant. Further, the record shows that appellant did not present sufficient evidence that Trinity was acting with malice when considering Trinity's statutory obligation to report suspected insurance fraud.

Accordingly, after having reviewed the evidence most strongly in favor of appellant, we find that reasonable minds can come to but one conclusion, that Trinity did not maliciously prosecute appellant. Appellant did not produce "substantial evidence" that the indictment was returned against him based upon perjured testimony, or that the grand jury proceedings were "significantly" irregular. Instead, the evidence shows that (1) there was probable cause that appellant committed attempted theft, insurance fraud and falsification, even though he was never convicted of these offenses; (2) the prosecution independently made the determination to indict appellant; and (3) Trinity acted without malice. Accordingly, we overrule appellant's fourth assignment of error.

Appellant argues in his fifth assignment of error that the trial court should have ruled on appellant's motion to compel discovery prior to granting summary judgment. The items appellant wished to have Trinity compelled to disclose involved the videotape. Appellant contends that he was unfairly prejudiced because, construing the evidence in his favor, the edited portions of the videotape could have showed appellant "laying on a hammock receiving massage therapy during the 10 to 12 hours that were not included in * * * the 2–hour tape."

We first note that, when given the opportunity to do so, appellant did not present evidence that he was receiving massage therapy in a hammock during the ten to twelve hours of videotape that was not submitted. Second, appellant does not allege how the failure to grant his motion would have affected Trinity's motion for summary judgment. Appellant had the burden of producing "substantial evidence" that the indictment was returned against him based upon perjured testimony, or that the proceedings were otherwise significantly irregular. Appellant does not explain how showing an edited videotape to a grand jury rises to the level of perjured testimony, or causing the proceedings to be significantly irregular. Appellant also does not explain how further discovery would have changed the trial court's decision to grant Trinity's motion for summary judgment. Appellant's fifth assignment of error is overruled.

Accordingly, we sustain appellant's first assignment of error. Appellant's second assignment of error is rendered moot pursuant to our decision sustaining appellant's first assignment of error, and appellant's third, fourth and fifth assignments of error are overruled. The October 5, 1997 judgment of the trial court is reversed and this cause is remanded for further proceedings in accordance with this opinion. The January 12, 1998 judgment of the trial court is affirmed.

*Judgments reversed in part,*
*affirmed in part*
*and cause remanded.*

DESHLER, P.J., and BOWMAN, J., concur.