OPINION
{¶ 1} Defendant-appellant, Quaran S. Covington, appeals from the May 29, 2002 judgment entry of the Franklin County Court of Common Pleas, finding appellant guilty of trafficking in cocaine, and sentencing appellant to three years incarceration. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On June 11, 2001, appellant was indicted for illegal manufacturing of drugs, and for trafficking in cocaine, both felonies of the second degree.[1] On December 4, 2001, the case was tried before a jury in which appellant took the stand and testified in his defense. The following facts, pertinent to this appeal, are taken from testimony of Detective Michael Johnson and Arrevion Spears.
 {¶ 3} On April 18, 2001, Detective Johnson was working undercover investigating narcotics activity in Columbus, Ohio. Detective Johnson was specifically investigating Spears, a known drug dealer. On April 18, 2001, Detective Johnson contacted Spears and arranged to purchase an ounce of crack cocaine from her.[2]
 {¶ 4} Detective Johnson agreed to met Spears at a Church's Chicken located on the corner of Fifth Avenue and Cleveland Avenue in Columbus, Ohio. Upon meeting Spears at the Church's Chicken, Spears told Detective Johnson that he had to follow her to her "dude's" house to pick up the crack cocaine. Spears testified that the word "dude" was slang for "drug supplier." (Tr. 39.) Detective Johnson followed Spears to her supplier's home.
 {¶ 5} Upon arriving at the designated location, Detective Johnson remained outside in his car, while Spears entered the house. According to Detective Johnson, Spears later returned outside and informed him that her supplier had to contact a friend to get some more drugs, because the supplier "was suffering from a drought, shortage of cocaine," and did not have enough to deal Spears. (Tr. 142.) Spears told Detective Johnson that it was going to be a while because her supplier was preparing the crack cocaine by letting it harden in the refrigerator. Detective Johnson testified that based on the amount of time it took for the transaction to be completed he decided to leave the area because he was concerned that there "may be a gun stuck to my head." (Tr. 104.) Detective Johnson testified that he told Spears he was going to a White Castle to get something to drink. (Tr. 103.)
 {¶ 6} Upon Detective Johnson's return, Spears came out of the house followed by an unidentified black male. Spears sat in the passenger seat of Detective Johnson's car while the unidentified black male stood outside the passenger side of the car, leaning on the edge of the window. Spears introduced the unidentified black male to Detective Johnson as appellant. Spears testified that she told Detective Johnson that he would have to deal with appellant on his own in the future. (Tr. 46.) Appellant and Detective Johnson exchanged hellos, and Detective Johnson continued to inspect the drugs, weighed the package, and gave Spears $1,100. Spears exited the car and Detective Johnson left. Spears testified that as she and appellant walked back up to his house, she gave appellant $1,100 and appellant gave her $50 in return. (Tr. 48.)
 {¶ 7} On December 10, 2001, the jury found appellant guilty of trafficking in cocaine and not guilty of illegal manufacturing of drugs. On January 30, 2002, the trial court sentenced appellant to three years incarceration. It is from this judgment that appellant appeals, assigning the following as error:
 {¶ 8} "First Assignment of Error
 {¶ 9} "The trial court erred by sustaining the prosecutor's objection to cross-examination of its detective witness regarding his ability to recall and relate events as required by Evid.R. 601(A) and 602.
 {¶ 10} "Second Assignment of Error
 {¶ 11} "The trial court erred in pronouncing its judgment of conviction and sentence because the verdicts of guilty were against the manifest weight of the evidence.
 {¶ 12} "Third Assignment of Error
 {¶ 13} "The Defendant-Appellant was deprived of the effective assistance of counsel for his failure to move for exclusion of Defendant-Appellant's prior record under Evid.R. 609(A), failing to request an instruction limiting consideration of hearsay testimony, and for failing to cross examine upon crucial factual testimony.
 {¶ 14} "Fourth Assignment of Error
 {¶ 15} "The trial court erred by instructing the jury on aiding and abetting where Defendant-Appellant was indicted as the principal offender."
 {¶ 16} In appellant's first assignment of error, he alleges that the trial court erred in sustaining the prosecutor's objection to defense counsel's cross-examination of Detective Johnson regarding the detective's ability to recall events.
 {¶ 17} The trial court has the discretion to limit the scope of cross-examination. Berlinger v. Mt. Sinai Medical Ctr. (1990),68 Ohio App.3d 830, 838. The trial court also retains wide latitude to impose reasonable limits on cross-examination based upon the concerns of harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. Delaware v. Van Arsdall (1986), 475 U.S. 673, 679, 106 S.Ct. 1431, 1435. As such, an appellate court should be slow to disturb a trial court's determination on the scope of cross-examination unless the trial court has abused its discretion and the party illustrates a material prejudice. Reinoehl v. Trinity Universal Ins. Co. (1998),130 Ohio App.3d 186, 194.
 {¶ 18} "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. An abuse of discretion connotes more than an error of judgment; it implies a decision that is arbitrary or capricious, one that is without a reasonable basis or clearly wrong. Pembaur v. Leis (1982), 1 Ohio St.3d 89; Wise v. Ohio Motor Vehicle Dealers Bd. (1995), 106 Ohio App.3d 562, 565; and In re Ghali (1992),83 Ohio App.3d 460, 466.
 {¶ 19} In this case, appellant specifically points to the part of the record where Detective Johnson testified about his concerns about being robbed and carrying a firearm. Appellant contends that the cross-examination of Detective Johnson as to whether he had a gun and, if so, where it was located was relevant and important under Evid.R. 601 and 602 in establishing Detective Johnson's ability to identify appellant. The prosecution objected, arguing that whether or not Detective Johnson had his firearm was irrelevant to the facts of the case. The trial court agreed and sustained appellee's objection.
 {¶ 20} It is evident from the record that the trial court limited appellant's scope of cross-examination based on relevancy. See Evid.R. 403. "Cross-examination shall be permitted on all relevant matters." Evid.R. 611(B). Whether or not Detective Johnson carried his firearm is irrelevant to the issue of identification and only marginally relevant to the ability of Detective Johnson to recall the events in question. As such, we conclude that the trial court did not abuse its discretion in limiting appellant's cross-examination on this issue. Accordingly, appellant's first assignment of error is not well-taken and is overruled.
 {¶ 21} In his second assignment of error, appellant contends his guilty verdict was against the manifest weight of the evidence. Appellant specifically argues that Spears' testimony was incredible, and the mistaken identification of appellant by Detective Douglas Eckhart renders his conviction against the manifest weight of the evidence.
 {¶ 22} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v. Thompkins (1997),78 Ohio St.3d 380, 387. In so doing, the court of appeals, sits as a " `thirteenth juror' " and, after " `reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most " `exceptional case in which the evidence weighs heavily against the conviction.' " Thompkins, supra, at 387.
 {¶ 23} As this court has previously stated, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass [(1967), 10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236. It was within the province of the trial court to make the credibility decisions in this case. See State v. Lakes (1964), 120 Ohio App. 213, 217 ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness"). See State v. Harris (1991), 73 Ohio App.3d 57, 63 (even though there was reason to doubt the credibility of the prosecution's chief witness, he was not so unbelievable as to render verdict against the manifest weight). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 24} In the instant case, the evidence against appellant was the testimony of Spears, and Detectives Johnson and Eckhart, as appellant's testimony presented a different set of facts. Spears testified that she took Detective Johnson to appellant, who was her supplier. (Tr. 39-40.) Spears testified that while she was in appellant's home, appellant told her that the crack cocaine was in the refrigerator hardening. (Tr. 42.) After Detective Johnson purchased the crack cocaine, Spears testified that appellant gave her $50 for setting up the transaction. (Tr. 44, 48.)
 {¶ 25} Detective Johnson testified that Spears introduced appellant to him and Spears told Detective Johnson that he could deal with appellant in the future. (Tr. 107.) Detective Johnson testified that identifying suspects ranks as the most important thing he does as a narcotics detective. (Tr. 162.) Detective Johnson testified that he is able to identify places and people in a short amount of time. (Tr. 163.) Detective Johnson testified that the dome light in his car was on when appellant stuck his head in the car and it illuminated appellant's face. (Tr. 169.) Detective Johnson testified that he looked at appellant's face for about 15 to 20 seconds, and that he was able to later identify appellant's face and his features from a photograph. (Tr. 108, 125-126.) Detective Johnson testified that he had no doubts that the individual he saw on the evening of April 18, 2001 with Spears was appellant. (Tr. 170.)
 {¶ 26} Detective Eckhart worked surveillance and security for Detective Johnson on the night of April 18, 2001. Detective Eckhart testified that due to the darkness and dim street lighting he could not make out the facial features of any individuals, but he was able to observe that the gentleman standing outside the passenger side of Detective Johnson's car was a "bigger man, over six — foot, very stocky built." (Tr. 182.) Detective Johnson testified that appellant fit the general description of the person he observed come out of the house that Spears entered, and who stood outside the passenger side of Detective Johnson's car. (Tr. 182-183, 195.)
 {¶ 27} Appellant testified that Spears came to his house on the night of April 18, 2001, but they never spoke and he never gave Spears any packages. (Tr. 225, 226.) Appellant further testified that he never walked outside to Detective Johnson's car with Spears. (Tr. 227.) Appellant testified that Spears spoke with his cousin, Draymont "Dray" Davis. (Tr. 225-226, 228.) Appellant testified that he never left his house on the night of April 18, 2001, and that Detective Johnson was mistaken when he testified that appellant stuck his head in the window of the car. (Tr. 230.)
 {¶ 28} The trier of fact was in the best position to observe the demeanor of the witnesses and to hear their testimony. The jury apparently found the testimony of Spears and the detectives more credible. A decision on the credibility of witnesses by a factfinder is given great deference by this court. Thus, as the jury was in the best position to assess the credibility of the witnesses and their testimony, we cannot say that the jury's verdict that appellant was guilty of trafficking in cocaine was against the manifest weight of the evidence. Moreover, the jury as factfinder, while taking into account the witnesses' manner and demeanor, had the prerogative to weigh the credibility and weight of testimony in light of Spears avoiding any jail time or possible reductions in her prison time as a result of testifying. See State v. Kelly, Franklin App. No. 02AP-195, 2002-Ohio-5797, at ¶ 18. Accordingly, appellant's second assignment of error is without merit and is overruled.
 {¶ 29} In his third assignment of error, appellant contends that he received ineffective assistance of counsel because his trial counsel failed to exclude evidence of appellant's prior record, failed to request a jury instruction limiting hearsay testimony, and failed to cross-examine on crucial factual matter.
 {¶ 30} In order to prevail on his claim of ineffective assistance of counsel under Strickland v. Washington (1984), 466 U.S. 668, 686,104 S.Ct. 2052, appellant must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." State v. Reynolds (1998), 80 Ohio St.3d 670,674. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland at 686. Thus, a two-part test is necessary to examine such claims. First, appellant must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. State v. Keith (1997), 79 Ohio St.3d 514, 534. Second, appellant must show that but for counsel's errors, there is a reasonable probability that the results of the trial would be different. Id.
 {¶ 31} The burden of showing ineffective assistance of counsel is on the defendant. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673, 675. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558 ("Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel"); State v. Carpenter (1996),116 Ohio App.3d 615, 626 (court of appeals is to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance"). Applying these standards, we find that appellant has failed to show that his counsel was ineffective.
 {¶ 32} In this case, appellant first contends that trial counsel's failure to request an exclusion under Evid.R. 609(A)(3) of appellant's prior misdemeanor conviction of presenting false information was prejudicial to appellant, and therefore requires an acquittal based on ineffective assistance of counsel claim. Appellant argues that while relevant, his prior conviction should be excluded under Evid.R. 403(B), as the probative value of his conviction was outweighed by "considerations of undue delay, or needless presentation of cumulative evidence."
 {¶ 33} A trial court has broad discretion to admit or exclude evidence, and its determination will not be reversed absent an abuse of discretion. State v. Sage (1987), 31 Ohio St.3d 173. Furthermore, a trial court possesses broad discretion under Evid.R. 609 to determine the extent to which testimony will be admitted. State v. Wright (1990),48 Ohio St.3d 5, 7; State v. Amburgey (1987), 33 Ohio St.3d 115.
 {¶ 34} In this case, appellant's 1992 conviction stemmed from presenting a police officer with a false driver's license. This instance of appellant's deception to the police, to which he pled guilty, clearly was probative of his truthfulness. Appellant contends that defense counsel was ineffective in failing to raise an objection to the conviction being admitted. The trial court, over defense counsel's request to exclude the evidence, admitted evidence of appellant's 1992 conviction on two bases. First, the trial court determined that appellant's conviction of presenting false information is covered under Evid.R. 609(A)(3) because "the crime involved dishonesty or false statement," and second, the trial court determined that the evidence was admissible under Evid.R. 609(B) because appellant's conviction occurred under the 10-year time limit to use the evidence. Appellant has failed to show how defense counsel's failure in objecting to the inclusion of the conviction amounted to ineffective assistance of counsel. Furthermore, appellant failed to demonstrate how the outcome of his trial would have been different.
 {¶ 35} Second, appellant contends that defense counsel was ineffective because he failed to request a jury instruction on Detective Johnson's inadmissible hearsay testimony. Appellant cites to the following testimony of Detective Johnson as prejudicial:
 {¶ 36} "When she came back out, she indicated that her dude was preparing the dope inside the house, that it was hardening, and in addition to that, she had indicated that her dude's associate, friend had to deliver some more dope because he didn't have it all." (Tr. 103.)
 {¶ 37} While it is not clear in the record if defense counsel requested a limiting jury instruction on the alleged hearsay testimony, it is clear that defense counsel failed to object to the lack of a limited use instruction by the trial court with regard to such hearsay testimony. However, this court cannot find there exists a reasonable probability that but for the trial court's failure to provide a limiting instruction, the outcome of appellant's trial would have been different.
 {¶ 38} Appellant has not shown that defense counsel's performance fell below an objective standard of reasonableness. The transcript indicates defense counsel had the opportunity to object, and chose otherwise. Detective Johnson's testimony was not prejudicial since the jury acquitted appellant of illegal manufacturing of drugs. Appellant has not demonstrated how defense counsel's decision fell below an objective standard of reasonable representation such that he was deprived of "counsel." Nor has he shown, assuming counsel was ineffective, that the error was so prejudicial as to deprive him of a fair trial, particularly in light of appellant's acquittal on the illegal manufacturing of drugs count.
 {¶ 39} Third, appellant contends that defense counsel was ineffective in failing to cross-examine Detective Johnson on the issue of identification, the detective's ability to explain the differences in the weight of the drug, and the detective's ability to demonstrate use of the digital scale. Appellant also contends that defense counsel failed to test the prosecution's theory that additional drugs were delivered to appellant's house to be added to the quantity appellant already had.
 {¶ 40} The Ohio Supreme Court has recognized that if defense counsel for strategic reasons, decides not to pursue every possible trial strategy, the defendant is not denied effective assistance of counsel. State v. Brown (1988), 38 Ohio St.3d 305, 319; State v. Johnson (1986),24 Ohio St.3d 87.
 {¶ 41} In this case, a careful review of the record demonstrates that appellant's allegations of ineffective assistance of counsel are unfounded. First, defense counsel did cross-examine Detective Johnson regarding the detective's ability to identify appellant. Defense counsel questioned Detective Johnson about his ability to identify appellant after only looking at him for 15 to 20 seconds. Detective Johnson indicated that based on his memory, he was able to identify appellant from photos he received from the motor vehicle department. Second, on direct, Detective Johnson explained in detail the differences of the weight of the crack cocaine at the time of the transaction and at the time it was turned into the property room where it received an assigned sealed weight. On cross, defense counsel had Detective Johnson demonstrate to the trial court how he used the digital scale.
 {¶ 42} Accordingly, after reviewing the complete record, we find that appellant was not deprived of his right to effective assistance of counsel. Appellant has failed to demonstrate to this court how defense counsel breached the duty to provide reasonable representation and demonstrate that but for defense counsel's errors, the result of the proceedings would have been different. As such, appellant's third assignment of error is not well-taken and is overruled.
 {¶ 43} In his fourth and final assignment of error, appellant contends that the trial court failed by instructing the jury on aiding and abetting where appellant was indicted as the principal offender. Appellant contends that he was not put on notice of the alleged conduct that he had to defend against.
 {¶ 44} At the onset we note that appellant failed to object to the trial court's jury instructions on aiding and abetting. Absent plain error, the failure to object to improprieties in jury instruction is waiver of the issue on appeal. State v. Underwood (1983), 3 Ohio St.3d 12,13. To constitute plain error, the error must be obvious on the record, palpable, and fundamental such that it should have been apparent to the trial court without objection. See State v. Tichon (1995),102 Ohio App.3d 758, 767. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996), 75 Ohio St.3d 163, 166. Notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Phillips (1995),74 Ohio St.3d 72, 83; State v. Ospina (1992), 81 Ohio App.3d 644, 647.
 {¶ 45} We find no plain error in the trial court's instruction. Under Ohio law, the state may charge and try a defendant as a principal and, if the evidence at trial reasonably indicates the defendant was an aider and abettor rather than a principal offender, a jury instruction on aiding and abetting may be given. State v. Perryman (1976),49 Ohio St.2d 14, 28, vacated in part on other grounds sub nom, Perryman v. Ohio (1978), 438 U.S. 911, 98 S.Ct. 3136.
 {¶ 46} In reaching its decision, the Perryman court impliedly found that providing the jury with an aiding and abetting instruction with respect to a charge upon which the defendant had been indicted and tried as a principal created no problems with regard to providing constitutionally sufficient notice to the defendant that he could be convicted of the charge as an aider and abettor.
 {¶ 47} Viewing the evidence offered in this case in a light most favorable to the state and applying the law as set forth above, we find that a rational trier of fact could have concluded that the prosecution proved, beyond a reasonable doubt, that appellant aided and abetted in the offense of trafficking in cocaine. Accordingly, appellant's fourth assignment of error is found not well-taken and is overruled.
 {¶ 48} For the following reasons, appellant's first, second, third, and fourth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and KLATT, JJ., concur.
[1] Appellant was indicted along with Arrevion Spears and James Edward Cook. Appellant was indicted under two counts of the indictment, while Spears was indicted under 11 counts, and Cook was indicted under three counts.
[2] As part of the undercover investigation, Detective Johnson bought drugs from Spears on numerous occasions prior to April 18, 2001.